ORIGINAL

NO. **1622·14**

IN THE COURT OF CRIMINAL
APPEALS OF TEXAS

GREGORY FONSECA
APPELLANT

VS.

THE STATE OF TEXAS
APPELLEE

FILED IN
COURT OF CRIMINAL APPEALS

FEB 12 2015

Abel Acosta, Clerk

APPELLANTS PETITION FOR DISCRETIONARY
REVIEW OF THE JUDGEMENT OF THE
THIRTEENTH COURT OF APPEALS AT CORPUS
CHRISTI/EDINBURG, TEXAS

TRIAL COURT NO. 80-12-A

COA #: 13-13-00500 CR

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 12 2015

Abel Acosta, Clerk

## PARTIES

A COMPLETE LIST OF ALL PARTIES TO THE TRIAL COURT'S JUDGEMENT OR ORDER APPEALED FROM, AND THE NAMES AND ADDRESSES OF ALL TRIAL AND APPELLATE COUNSEL INCLUDED:

GREGORY FONSECA, APPELLANT
THE STATE OF TEXAS, APPELLEE

APPELLANT:
GREGORY FONSECA #1878692
JAMES V. ALLRED UNIT
2101 FM 369 N.
IOWA PARK, TX. 76367

FOR THE STATE OF TEXAS:
CRIMINAL DISTRICT ATTORNEY
KERI L. MILLER
415 ST. LOUIS ST.
GONZALES TX. 78629

# TABLE OF CONTENTS
## (RULE 68.4 (a) T.R.A. P.)

| | PAGE |
|---|---|
| PARTIES | II |
| TABLE OF CONTENTS | III |
| INDEX OF AUTHORITIES | IV |
| STATEMENT REGARDING ORAL ARGUMENT | V |
| STATEMENT OF THE CASE | 2 |
| STATEMENT OF PROCEDURAL HISTORY | 2 |
| APPELLANT'S GROUNDS FOR REVIEW | 2 |

POINT OF ERROR NUMBER ONE: THE COURT OF APPEALS ERRED IN CONCLUDING THAT THERE WAS NO JUROR MISCONDUCT; THAT ALL THE ALLEGED JUROR MISCONDUCT (APPARENTLY) WAS ILLUSORY ON PART OF THE BAILIFF (S) AND THE MOST FUNDAMENTAL QUESTION REMAINS: WHO'S LYING? IF THE BAILIFF (S) INFORMED THE COURT OF VARIOUS INSTANCES OF JUROR MISCONDUCT—AND IF THE JURORS DENIED ENGAGING IN THE ALLEGED MISCONDUCT—WHO'S LYING AND WHY?

POINT OF ERROR NUMBER TWO: THE APPELLANT IS FACTUALLY INNOCENT AND HIS TRIAL ATTORNEY AND HIS APPEAL ATTORNEY WERE TOTALLY AND COMPLETELY INCOMPETENT AND INEFFECTIVE

| | PAGE |
|---|---|
| ARGUMENT | 3 |
| CONCLUSION AND PRAYER | 8 |
| CERTIFICATE OF SERVICE | |
| APPENDIX I | |

(III)

# INDEX OF AUTHORTIES

UNITED STATES CONSTITUTION ——

BRADY V. MARYLAND, 373 U.S. 83 (1963) ——

THE MICHAEL MORTON ACT ——

## STATEMENT REGARDING ORAL ARGUMENT

### (Rule 68.4 (c), TEX.R.APP. PROC.)

PETITIONER WAIVES ORAL ARGUMENT.

## STATEMENT REGARDING ORAL ARGUMENT

### (Rule 68.4 (c), TEX.R.APP. PROC.)

V

PETITIONER WAIVES ORAL ARGUMENT.

IN THE COURT OF CRIMINAL
APPEALS OF TEXAS


FONSECA, GREGORY
(Petitioner pro se)


THE STATE OF TEXAS
(Respondent)


THIRTEEN COURT OF APPEALS NO: 13-13-00500 CR

---

PETITION FOR DISCRETIONARY REVIEW

---

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:
COMES NOW GREGORY FONSECA, HEREIN STATED
"PETITIONER" Pro se, A LAYMAN, RESPECTFULLY
PRAYS THAT THIS COURT GRANT THIS PETITION FOR
DISCRETIONARY REVIEW, REVERSE THE DECISION
OF THE THIRTEEN COURT OF APPEALS FOR IT IS
BASED WHOLLY ON THE SPECIOUS ARGUMENTATION OF
APPELLATE ATTORNEY IN VIOLATION OF THE UNITED
STATES CONSTITUTION WHICH GUARANTEES
CRIMINAL DEFENDANTS THE RIGHT TO COMPETENT
AND EFFECTIVE REPRESENTATION THROUGHOUT EACH
AND EVERY CRIMINAL PROCEEDING---

(1)

## STATEMENT OF THE CASE
### (Rule 68.4(d), T.R.A.P.)

THIS IS AN APPEAL FROM THE 2nd 25th DISTRICT COURT OF GONZALES COUNTY, TEXAS. APPELLANT WAS TRIED BY A JURY AND FOUND GUILTY ON TWO COUNTS OF AGGRAVATED ASSAULT WITH A DEADLY WEAPON AND SENTENCED TO LIFE PLUS 99-YEARS IN TDCJ-ID. THE COURT OF APPEALS AFFIRMED THE TRIAL COURT'S DECISION AND APPELLANTS CONVICTION.

## STATEMENT OF PROCEDURAL HISTORY
### (Rule 68.4(e), T.R.A.P.)

OPINION OF THE THIRTEEN COURT OF APPEALS: NOV. 13, 2014. NO MOTION FOR RE-HEARING FILED. THIS PETITION FOR DISCRETIONARY REVIEW IS DUE TO BE FILED NO LATER THAN: FEB. 13, 2015.

## APPELLANTS GROUNDS FOR REVIEW
### (Rule 68.4(f), T.R.A.P.)

GROUND FOR REVIEW NUMBER ONE:
THE APPELLANT HAS BEEN NEGLECTED AND ABANDONED BY HIS TRIAL ATTORNEY WHO FAILED TO PRESENT A COHERENT DEFENSE THROUGHOUT HIS ONE-SIDED TRIAL. APPELLATE ATTORNEY ENGAGED IN MERE SPECIOUS ARGUMENTATION, FILING A FRIVIOLOUS APPEAL BUT NEVER ONCE POINTING OUT A GLARING OMISSION!

THE DISTRICT ATTORNEY, THE JUDGE AND THE BAILIFFS CANNOT HAVE IT BOTH WAYS: EITHER THE COMPLAINED OF JUROR MISCONDUCT OCCURRED, OR IT DIDN'T OCCUR? WHICH ONE IS IT? SOMEWHERE IN THIS EQUATION SOMEBODY IS LYING AND ████ NEITHER SCENARIO BODES WELL FOR THE APPELLANT BECAUSE IF THE BAILIFFS LIED, WHY? WHAT MOTIVATED THE BAILIFFS TO BRING UP THESE ALLEGATIONS OF JUROR MISCONDUCT? IF THE JURORS DENIED ENGAGING IN THE COMPLAINED OF JUROR MISCONDUCT THEN WHY WOULD THE BAILIFFS BRING THESE ACCUSATIONS TO THE COURTS ATTENTION? OR ARE THE JURORS LIARS AND AM I BEING TRIED BY A GROUP OF LIARS? THOSE WERE MY CONCERNS AND THE JUDGE SIMPLY SKIRTED THE ISSUE... WHY COULDN'T MY TRIAL ATTORNEY BE ALLOWED TO QUESTION THE BAILIFFS?

ARGUMENT ON GROUND NUMBER ONE:

AS THE SEQUENCE OF EVENTS WILL DEMONSTRATE, THE ACCUSATIONS OF JUROR MISCONDUCT WERE MADE IN JEST (SIMPLY PRETEXTUAL) AND THE DISTRICT ATTORNEY WAS ON A "FISHING EXPEDITION" PLAIN AND SIMPLE. HOW CAN A COURT OFFICIAL SUCH AS A BAILIFF, INSTEAD OF APPROACHING THE PRESIDING JUDGE, ENGAGE IN ex parte COMMUNICATION WITH THE DISTRICT ATTORNEY ABOUT ALLEGED JUROR MISCONDUCT, AND IN THE NAME OF FAIR PLAY, WHY WASN'T MY TRIAL ATTORNEY ALLOWED TO CROSS- EXAMINE

(3)

THE BAILIFFS? TO PARAPHRASE, INITIALLY THE D.A. STATED "IT HAS BEEN BROUGHT TO OUR ATTENTION" (BUT SHE NEVER IDENTIFIED HER SOURCE) THAT THERE HAD BEEN "SOME POTENTIAL COMMUNICATION BETWEEN THE DEFENDANT, THE DEFENDANT'S FAMILY AND JURORS," HOWEVER, THERE WAS NO EVIDENCE TO CORROBORATE THIS ACCUSATION. THE D.A. THEN STATED "IN ADDITION YOUR HONOR, THE BAILIFF(S) WITNESSED ALL SORTS OF JUROR MISCONDUCT THAT ULTIMATELY THE JUDGE ARBITRARILY DECIDED NEVER OCCURRED? NOT ONLY DID THEY SLANDER MY FAMILY, GIVING THE FALSE AND MISLEADING IMPRESSION THAT MY FAMILY WAS ATTEMPTING TO CONTACT JURORS, HOW WAS THE APPELLANT ABLE TO COMMUNICATE WITH JURORS IF HE WAS IN CUSTODY AT ALL TIMES? THE JUDGE WAS OBVIOUSLY BIASED AGAINST THE DEFENDANT, NEVER ONCE DID HE USE THE "S-WORD", SLEEPING! THE JUDGE SAID HE CAUGHT THE JUROR ASLEEP "ONCE" BUT HE DIDN'T CALL IT "SLEEPING"?! HE STATED JURORS THINK BETTER WITH THEIR EYES CLOSED? SERIOUSLY? THE APPELLANT HAS NEVER HEARD OF THIS "PHENOMENON". IT MUST BE EXCLUSIVE TO JURORS BECAUSE NO OTHER "PROFESSION" WOULD ALLOW IT! "PEREMPTORY STRIKE WAS JUSTIFIED WHEN VENIRE-PERSON APPEARED TO BE SLEEPING" (Roberson V. State, 866 SW2d 259 (App. Dist. 2d 1993). IF "APPEARING TO BE ASLEEP" IS A GOOD ENOUGH ▬▬▬ REASON TO KEEP A PERSON OFF A JURY, THEN OBVIOUSLY IF A PERSON HAS "HIS EYES CLOSED", THEN THE JUDGE COULD HAVE AT LEAST CAUTIONED THE SLEEPING JUROR PERSONALLY.

(4)

## BRADY VIOLATIONS:

"PROSECUTORS FAILURE TO RELEASE EVIDENCE OF VICTIMS BLOOD ALCOHOL LEVEL WHICH WAS BOTH FAVORABLE AND MATERIAL TO THE DEFENSE AND VIOLATED PETITIONERS DUE PROCESS RIGHTS TO A FAIR TRIAL UNDER Brady" ( cheung V. maddock, 32 F. supp 1150 ) — THE ALLEGED VICTIMS DENIED BEING DRUNK BUT TOXICOLOGY REPORTS TAKEN FIVE (5) HOURS AFTER THE ALLEGED ASSAULT WILL DEBUNK THIS FALSE ASSERTION. ONE OF THE ALLEGED VICTIMS STATED, UNDER OATH, THAT HE WAS NOT ARMED, HOWEVER, HOSPITAL RECORDS INDICATE HE POSSESSED ON HIS PERSON " A KNIFE" UPON HIS ADMISSION TO THE HOSPITAL. THE RECORD IS REPLETE WITH MORE OF THIS KIND OF PERSURIOUS TESTIMONY. FOR EXAMPLE, THE D.A., IN AN ATTEMPT TO LINK APPELLANT TO CERTAIN BLOODIED CLOTHING, PERSURED HERSELF WHEN SHE TOLD THE JURY THAT "HE SIGNED AN INMATE PROPERTY SLIP AT THE COUNTY JAIL, HE SIGNED FOR THIS BLOODIED CLOTHING AT THE JAIL," HOWEVER, IF YOU LOOK AT THE INMATE PROPERTY SLIP, APPELLANT'S SIGNATURE DOES NOT APPEAR ON SAID INMATE PROPERTY SLIP (see Appendix 1)

"Trial counsel's failure to read and review documents disclosed by the Government, which contained potentially exculpatory materials, constituted ineffective assistance of counsel" (U.S. V. myers, 892 F.2d 642).

(5)

MY TRIAL ATTORNEY FAILED TO REVIEW THE MEDICAL FILES WHICH CONTAINED EXCULPATORY EVIDENCE [SUCH AS THE VICTIMS BLOOD ALCOHOL LEVEL, THE FACT THAT ONE OF THE VICTIMS LIED UNDER OATH BY CLAIMING HE WAS NOT ARMED ON THE DAY OF THE ALLEGED ALTERCATION BUT MEDICAL PERSONNEL INDICATED THE ALLEGED VICTIM HAD A KNIFE ON HIS PERSON UPON ADMISSION TO THE HOSPITAL]. THE STATE CLAIMED IT HAS "AN OPEN DOOR POLICY" i.e., THAT MY TRIAL ATTORNEY WAS FREE TO REVIEW THE MEDICAL FILES ANY TIME HE WANTED TO BUT THIS IS COMPLETE HOGWASH! STATE-APPOINTED ATTORNEYS IN GONZALES COUNTY ARE UNDER-STAFFED AND OVER-WORKED (TO SAY NOTHING OF UNDER-PAID) WITH NO REAL INCENTIVE TO WORK FOR THEIR INDIGENT CLIENTS, AND AS APPELLANT'S CASE DEMONSTRATES, APPELLANT'S TRIAL ATTORNEY DID NOT REVIEW MEDICAL RECORDS, AND TRIAL ATTORNEY FAILED TO PRESENT A COHERENT DEFENSE, NO DEFENSE IS AKIN TO NO REPRESENTATION. HAD THE STATE TURNED OVER ALL <u>Brady</u> MATERIAL TO THE APPELLANT WHILE APPELLANT WAS CONFINED TO THE COUNTY JAIL, APPELLANT WOULD HAVE DISCOVERED ALL THE EXCUPATORY EVIDENCE AND APPELLANT WOULD HAVE BEEN IN A BETTER POSITION TO AID IN HIS OWN DEFENSE, HOWEVER, GONZALES COUNTY D.A.'S OFFICE IGNORES THE BRADY LAW, HER CLAIM OF "OPEN-DOOR" POLICY IS PREPOSTEROUS BECAUSE THE "OPEN-DOOR" IS SELDOMLY USED ---

(6)

## POLICE AND PROSECUTORIAL MISCONDUCT:

THE D.A.'S FIRST "FOUL BLOW" WAS THE RACIAL COMPOSITION OF JURY VENIRE (NO BLACKS WERE SUMMONED FOR JURY DUTY). THE TRIAL JUDGE ARBITRARILY DENIED MY OBJECTION TO THE RACIAL COMPOSITION OF JURY VENIRE WITHOUT CONDUCTING A BASTON-TYPE HEARING. PRACTICALLY EVERY POLICE OFFICER WHO TOOK THE STAND PERJURED THEM- SELVES. THE LEAD DETECTIVE STATED, UNDER OATH, THAT HE WAS ON THE SCENE (OF THE ALLEGED ASSAULT) BUT THEN HE CHANGED HIS STORY AND HE SAID HE NEVER ACTUALLY MADE THE SCENE (THAT HE WAS TOLD AT THE HOSPITAL THAT HE WASN'T NEEDED SO HE WENT HOME) AND YET, SOMEHOW, AN HOUR LATER HE WAS ABLE TO RETRIEVE THE KNIFE SUPPOSEDLY USED IN THE ASSAULT (A knife he denied ever handling!). THE CHAIN OF CUSTODY ON ALL THE PHYSICAL-EVIDENCE (ITEMS) INTRODUCED AT TRIAL WAS NEVER CONCLUSIVELY ES- TABLISHED. IT WAS NEVER CONCLUSIVELY ESTABLISHED WHICH POLICE OFFICERS HANDLED WHICH PIECE OF EVIDENCE BECAUSE POLICE REPORTS/STATEMENT ARE CONTRADICTORY. SOME OF THE CLOTHING WAS JUST PICKED OFF THE GROUND, THE "RED SHIRT" FOR EXAMPLE, ALL WITNESSES, INCLUDING POLICE, WERE ADAMANT THE ASSAILANT WAS WEARING A "RED-SHIRT", HOWEVER, IF YOU LOOK AT MY MUG-SHOT (TAKEN ON THE DAY OF THE ALLEGED ASSAULT) IT IS CLEAR I AM WEARING A WHITE, COLLARED SHIRT! THE D.A. REFUSED TO ACCEPT A NOTARIZED, SWORN AFFIDAVIT FROM JOE BANDA (ONE OF THE ALLEGED VICTIMS)

(7)

WHEREIN HE (JOE BANDA) STATED THAT HE DID NOT WISH TO PROSECUTE, THAT HE WAS TOO DRUNK TO RECALL OR REMEMBER THE INCIDENT/ALTERCATION. JOE BANDA FURTHER INDICATED THAT HE DID NOT IDENTIFY APPELLANT TO POLICE AT NO TIME BUT POLICE, WHO HAVE ALREADY SHOWN A PROPENSITY TO EMBELLISH, CLAIMED JOE BANDA IDENTIFIED APPELLANT ON THE SCENE. MY TRIAL ATTORNEY DID ABSOLUTELY NOTHING BEFORE, AFTER OR DURING MY TRIAL TO CHALLENGE THIS UNRELIABLE/UNCORROBORATED IDENTIFICATION EVIDENCE (U.S. V. Harris, 415 F.2d 359). POLICE IGNORED ALL EXCULPATORY EVIDENCE — POLICE DID NOT PHOTOGRAPH THE INJURIES SUS-TAINED BY THE APPELLANT EVEN THOUGH POLICE WITNESSED 6 or 7 ADULT MALES STOMPING THE APPELLANT ALL OVER THE BODY AND HEAD BUT ALL THESE INDIVIDUALS RAN AWAY WHEN POLICE ARRIVED. ANY INDIVIDUAL PART OF THIS ATTACKING MOB COULD HAVE BEEN THE ASSAILANT BUT WE'LL NEVER KNOW BECAUSE POLICE LET THEM RUN AWAY. THE ALLEGED VICTIMS SWORE UNDER OATH THERE WAS NO MOB OF PEOPLE ATTACK-ING APPELLANT BUT POLICE SAID THERE WAS? THE D.A. TOLD THE JURY THAT ALTHOUGH I WAS ATTACKED BY A MOB AND LEFT FOR DEAD (POLICE SAID I WASN'T BREATHING WHEN THEY FOUND ME), APPELLANT DID NOT SUSTAIN A SCRATCH?!? WHY WEREN'T MY MEDICAL RECORDS TURNED OVER?

(8)

APPELLANT'S CHANGE OF VENUE MOTION WAS ARBITRARILY DENIED BY TRIAL JUDGE (THE HEARING WAS ROTE AND PERFUNCTORY). BECAUSE THE APPELLANT KNEW TRIAL ATTORNEY DID NOT HAVE APPELLANT'S BEST INTERESTS AT HEART, APPELLANT ASKED TRIAL ATTORNEY TO REMOVE HIMSELF FROM APPELLANT'S CRIMINAL CASE. TRIAL ATTORNEY PROMPTLY FILED A MOTION TO REMOVE HIMSELF FROM MY CASE - THIS MOTION WAS NEVER HEARD BY THE TRIAL JUDGE! TRIAL JUDGE ENTERTAINED AND GRANTED EVERY MOTION THE D.A. FILED BUT THE TRIAL JUDGE COULD NOT EXTEND THAT SAME COURTESY TO THE APPELLANT? HOW ONE-SIDED, BIASED AND PARTIAL CAN YOU BE?

JUDGE KIRKENDALL:

JUDGE KIRKENDALL WAS THE DISTRICT ATTORNEY WHO SENT APPELLANT TO PRISON BACK IN 1985 - FORWARD ALMOST 30-YEARS AND KIRKENDALL IS THE HEAD-JUDGE OF GONZALES COUNTY NOW. AS A MATTER OF ROUTINE, AND BECAUSE YOU WANT TO AVOID THE APPEARANCE OF ANY IMPROPRIETY, JUDGE KIRKENDALL SHOULD HAVE REMOVED HIMSELF. BUT NO, HE REFUSED TO REMOVE HIMSELF. MY TRIAL ATTORNEY HAD INFORMED ME THAT JUDGE KIRKENDALL HAD BEEN ENGAGING IN ex parte COMMUNICATIONS IN THE COURT ROOM. IN FRONT OF WITNESSES INCLUDING COURT

(9)

PERSONNEL AND MY ATTORNEY SO I FILED A COMPLAINT AGAINST SUDGE KIRKENDALL WITH THE COMMISSION OF SUDICIAL MISCONDUCT AND I MADE SUDGE KIRKENDALL AWARE OF THIS COMPLAINT. SO FINALLY AN OUT-SIDE SUDGE, A HISPANIC SUDGE, WAS BROUGHT IN TO HEAR THE ████ - RECUSAL MOTION AND KIRKENDALL WAS REMOVED — MY TRIAL ATTORNEY INFORMED ME THAT WHEN SUDGE CANALES REMOVED KIRKENDALL FROM MY CASE, SUDGE KIRKENDALL CONTINUE TO MAKE ex parte COMMUNICATIONS IN FRONT OF MY TRIAL ATTORNEY AND HIS OWN CLERK (SECRETARY), MAKING RACIAL COMMENTS TO THE EFFECT THAT EVEN THOUGH HE WAS REMOVED HE WOULD MAKE SURE NO HISPANIC SUDGE WOULD BE APPOINTED TO TRY MY CASE, etc., etc., AND I REPORTED THIS MISCONDUCT TO AFOREMENTIONED COMMISSION AS WELL. IT IS MY CONTENTION THAT SUDGE KIRKENDALL'S INVOLVEMENT IN MY CASE POISIONED THE PROCEEDINGS AGAINST ME FROM START TO FINISH. IF HE IS TELLING THE D.A., "I WANT TO MOVE HIS CASE UP THE DOCKET AS SOON AS POSSIBLE, I DON'T WANT HIM IN GONZALES COUNTY, HE NEEDS TO BE IN PRISON", etc., etc., WHICH IS WHAT MY ATTORNEY INFORMED ME THAT SUDGE KIRKENDALL WAS MAKING THESE KIND OF

(10)

ex parte communications in the court room, so now he's taking on the role of prosecutor, forcing the D.A. to take my case to trial A.S.A.P. which gave my (incompetent) attorney even less time to prepare...

## SUMMARY

PETITIONER HAS ESTABLISHED THROUGH THE PREPONDERANCE OF THE EVIDENCE THAT THE STATE, IF NOT FOR THE PERJURIOUS TESTIMONY OF POLICE AND STATE WITNESSES AND PROSECUTRIAL MISCONDUCT ENUMERATED HEREIN, IF NOT FOR THE BATSON AND BRADY VIOLATIONS, THIS CASE IS A COMPLETE TRAVESTY OF JUSTICE, CONVICTED SOLELY ON THE PERJURIOUS TESTIMONY OF STATE WITNESSES AND IT SHOULD BE OBVIOUS TO ANY OBJECTIVE OBSERVER, THROUGH A ▮▮▮▮ CURSORY REVIEW OF THE RECORD, THAT PETITIONER HAS BEEN DENIED A FAIR AND IMPARTIAL TRIAL.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, APPELLANT, GREGORY FONSECA, PRAYS THAT THE COURT OF CRIMINAL APPEALS EXERCISE ITS DISCRETIONARY JURISDICTION, AND GRANT APPELLANT'S PETITION FOR DISCRETIONARY REVIEW.

Respectfully Submitted,
Greg Fonseca
(Petitioner pro-se)
Gregory Fonseca 1878692
Allred Unit
2101 Fm 369 N.
Iowa Park, TX. 76367

(11.)

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY THAT A TRUE AND CORRECT COPY OF THE ABOVE AND FOREGOING APPELLANT'S PETITION FOR DISCRETIONARY REVIEW WAS MAILED TO COURT OF CRIMINAL APPEALS CLERK'S OFFICE, P.O. BOX 12308, AUSTIN, TEXAS, 78711 ON Feb. 7th, 2015 BY DROPPING SAME IN THE UNITED STATES MAIL BOX AT THE ALLRED PRISON UNIT.

#1878692
Gregory Fonseca
Allred unit
2101 Fm 369 N.
Iowa Park, TX. 76367

(17)

APPENDIX - I

( copy of "Intake sheet Booking & property
Gonzales County Jail )

grotesque prosecutorial misconduct



# INTAKE SHEET
# BOOKING & PROPERTY
# GONZALES COUNTY JAIL

| DATE/TIME BOOKED 11/27/2011 2:20 AM | ARRESTING AGENCY Gonzales County Sheriff's Office | ARRESTING OFFICER Gindler, Brent Farek |
|---|---|---|
| | | SID# TX 03540687 |
| SO NUMBER 4999 | BOOKING ID 11-01233 | Cell 4 |
| | | FBI# 349327EA1 |
| BOOKING OFFICER Mraz, Zachary Lane | CLASSIFICATION Maximum Risk | |

## IDENTIFICATION

NAME
**FONSECA, GREGORY**

| | DATE OF BIRTH 01/30/1970 | PLACE OF BIRTH GONZALES, TX | AGE 41 | FRONT IMAGE |
|---|---|---|---|---|

ALIAS NAME(S)

ADDRESS & PHONE#
1214 ST PETER
GONZALES TX 78629
830-857-1038

| EMPLOYER WAYNE BROWN | OCCUPATION WB FARM AND SUPPLY | SOCIAL SECURITY # 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 |
|---|---|---|

| RACE W | SEX M | HGT 5 FT. 5 IN. | WGT 180 | HAIR BLK | EYE BRO | ETH H | BLD HEA | COMP MED-BRN | DL/ID# 29160673 | STATE TEXAS | TYPE ID CARD |
|---|---|---|---|---|---|---|---|---|---|---|---|

SCARS, MARKS, TATTOOS, AMPUTATIONS
TATTOO ON BACK; TATTOO ON CHEST; TATTOO ON ARM, LEFT, NONSPECIFIC; TATTOO ON FINGER(S), LEFT HAND; TATTOO ON HAND, LEFT; TATTOO ON LEG, LEFT, NONSPECIFIC; TATTOO ON SHOULDER, LEFT; TATTOO ON FOREARM, LEFT; TATTOO ON ARM, RIGHT, NONSPECIFIC; TATTOO ON HAND, RIGHT; TATTOO ON LEG, RIGHT, NONSPECIFIC; TATTOO ON SHOULDER, RIGHT; TATTOO ON FOREARM, RIGHT; TATTOO ON ARM, LEFT UPPER; TATTOO ON ARM, RIGHT UPPER

*(handwritten: face & head swollen - no pictures of injuries)*

## PROPERTY

| QTY | ITEM DESCRIPTION | LOCATION ON INTAKE |
|---|---|---|
| 1 | 1 wht pair socks, 1 pair blu jeans, 1 wht shirt | With Inmate |
| 1 | 1 pair blue boxers | With Inmate |
| 1 | 1 red muscle shirt, 1 blue jean jacket, 1 pair bro shoes | Jail Property Room |
| 1 | 1 blk belt | Jail Property Room |
| 1 | 1 blk cell phone, 1 bro wallet, 1 pack gum, 1 gry lighter | Jail Property Room |
| 1 | TX I.D. card, TDCJ I.d. card | Jail Property Room |
| 1 | $8.00 Cash, $2.20 Change | Commissary Fund |

## EMER

| EMERGENCY CONTACT JANNIE FONSECA | RELATIONSHIP MOTHER | EMERGENCY CONTACT ADDRESS 1214 SAINT PETER STREET GONZALES TEXAS 78629 | PHONE 830-857-1038 | PHONE NUMBER(S) CALLED AT BOOKING 830-857-1038 |
|---|---|---|---|---|

## CHARGES

| HOLD REASON | WARRANT REF# | CHARGE / OFFENSE | DEGREE | COURT | BOND STATUS | BOND | FINE |
|---|---|---|---|---|---|---|---|
| WARRANTLESS /ON-VIEW | | AGG ASSAULT W/DEADLY WEAPON | F2 | GONZALES DISTRICT COURT | SET BY JUDGE | 25,000.00 | |
| WARRANTLESS /ON-VIEW | | AGG ASSAULT W/DEADLY WEAPON | F2 | GONZALES DISTRICT COURT | SET BY JUDGE | 25,000.00 | |

◄ END OF LIST ►

## INTAKE

I certify that this is a correct list of items removed from my possession at the time I was placed in jail.

Received on: 11/27/2011 @ 1:50 AM

*(handwritten: Lawyer failed to use mug shot)*

☒ _____
Prisoner's Signature

☒ _____
Detention Officer's Signature

*(handwritten: DMA Finger)*

*(handwritten: DA lied and said I signed for these items, where is the signature?)*

I _____(inmates initials) understand that while in custody at the Gonzales Co. Jail, any money over $5.00 in my possession at the time of booking will be placed in my commissary account. Money can only be released by check after it has posted to my account. I will also be charged a fee of $3.00 for a hygiene pack on intake if moved to population this will be billed to commissary account, as well. If at any time I am found to be indigent I will be



NUMBER 13-13-00500-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GREGORY FONSECA,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

On appeal from the 25th District Court
of Gonzales County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Justice Longoria**

Appellant, Gregory Fonseca, appeals his jury convictions for two counts of
aggravated assault with a deadly weapon. The jury assessed a life sentence for count
one and a ninety-nine year sentence for count two. For each count, the jury assessed a

fine in the amount of $10,000. In this appeal, appellant contends that the trial court erred by failing to declare a mistrial because of alleged juror misconduct. In addition, appellant also contends, and the State agrees, that the trial court erred in ordering appellant to pay $500 in attorney's fees that were assessed as court costs for count one. Finally, appellant complains, and the State agrees, that the trial court erred in entering a judgment stating that the two $10,000 fines assessed against appellant are to run consecutively, instead of concurrently. For the reasons set forth below, the Court modifies the trial court's judgment to delete the $500 in attorney's fees assessed against appellant and included as court costs in count one and to state that the two $10,000 fines imposed against appellant shall run concurrently. The Court affirms the trial court's judgment as modified.

## I. BACKGROUND

During the testimony of Samantha Manning, a forensic scientist for the Texas Department of Public Safety Laboratory, the trial court noticed that a juror appeared to have fallen asleep. The trial court promptly recessed the trial. After the recess, the trial court instructed the jurors that if they needed a break to stay alert to let him know and he would give them a break. The testimony of Samantha Manning continued. She explained to the jurors how she determined which samples should be taken and sent to the DNA forensic scientist for analysis. Appellant did not object to the sleeping juror, did not ask the trial court to inquire of the juror about testimony he or she may have missed, and did not move for a mistrial.

Later in the trial, the State announced that it had learned that members of appellant's family were possibly trying to contact one or more jurors and that two jurors had shared something written on their notepad with each other. Appellant immediately

2

moved for a mistrial. The trial court withheld its ruling and decided to speak with the jurors to ensure the fairness of the proceedings.

After speaking to the two jurors in chambers, the judge returned to the courtroom with all parties present, outside the presence of the jurors, and explained that after talking with both jurors he felt that there had been no impropriety. The trial court also stated that he did not see any passing of notes between the jurors. Appellant moved for a mistrial stating that he did not believe the jurors could be fair and that they may have felt pressure from being singled out. The trial court stated that he handled the situation in a way so that the jurors would not have felt intimidated and based on his conversations with them he did not believe they felt intimidated by the inquiry. The trial court denied appellant's motion for mistrial. The following day, appellant renewed his request for a mistrial, this time, appellant added that some of the jurors "couldn't stay awake." The court denied the motion. The jury found appellant guilty of both counts of aggravated assault.

Before the punishment phase began, appellant moved again for a mistrial, arguing that there had been "serious misconduct on the part of the jury" because "[t]hey fell asleep" and "[t]hey could not pay attention." Appellant also argued that the jurors "were intimidated by the Court." The trial court denied the motion.

During the second day of the punishment phase of trial, appellant's sister, Agapita Fonseca, asked to speak on the record, outside the presence of the jury. Ms. Fonseca claimed that she witnessed a juror sleeping Monday, Tuesday, and Wednesday of the guilt-innocence phase of trial. Ms. Fonseca claimed that after the verdict was read the same juror smirked at her and she felt "disrespected." When asked again by appellant's trial counsel if there had been any contact between her family members and the jurors,

she said no; however, she indicated that she was Facebook friends with one of the jurors. She then clarified that she and the juror have mutual friends through Facebook. Ms. Fonseca claimed that one of the jurors was very close to a brother of hers. The trial court asked Ms. Fonseca if there had been any contact between any jurors and her family members prior to the verdict, and she answered that there had not been.

In response to Ms. Fonseca's statements, the trial court explained that he had been observing the jurors throughout the entire trial and that there was only one time during the trial when he found one juror asleep, a situation which he addressed by taking a recess. The trial court noticed some jurors had their eyes closed during the testimony, but he believed they were not asleep and instead were listening attentively to the testimony. The trial court stated that the "integrity of the trial was not jeopardized as a result of that juror [who he believed was asleep]." In response to Ms. Fonseca continuing to argue with the trial court, he stated that "we did everything that we're supposed to do to make the trial fair."

The proceedings then resumed, and as set forth above, the jury gave appellant a life sentence for count one and a ninety-nine year sentence for count two. The jury also assessed a fine in the amount of $10,000 for each count. This appeal ensued.

## II. MISTRIAL

In his first issue, appellant argues that the trial court erred by denying his requests for a mistrial.

### A. Applicable Law

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3

4

S.W.3d 547, 567 (Tex. Crim. App. 1999). Thus, a trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error. *Id.* The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Id.*

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Id.* at 884–85. Less drastic alternatives include instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand," and questioning the jury "about the extent of any prejudice," if instructions alone do not sufficiently cure the problem. *Id.* at 885. Although requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative. *Id.*

## B. Standard of Review

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* at 884. An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

## C. Discussion

Appellant argues that all of the "facts taken together place into question whether there was juror misconduct in the trial of this case." We will examine each contention in turn.

The parties agree that a contemporaneous objection is required to preserve error with respect to a sleeping juror. *See Thieleman v. State*, 187 S.W.3d 455, 458 & n.3 (Tex. Crim. App. 2005). Appellant did not make a contemporaneous objection to the sleeping juror. Accordingly, error was not preserved. *See id.*

Furthermore, "a court has considerable discretion in deciding how to handle a sleeping juror." *Menard v. State*, 193 S.W.3d 55, 60 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)). Even if appellant had properly preserved this issue for appellate review, he has not demonstrated that the trial court's finding that the integrity of the trial was not jeopardized as a result of the sleeping juror or that the trial court's actions to remedy the situation by taking a recess were outside the zone of reasonable disagreement. *See Ocon*, 284 S.W.3d at 885. The same is true with respect to the jurors who were listening with their eyes closed. No abuse of discretion has been shown.

Next, appellant argues that the trial court erred by denying his request for a mistrial because there were allegedly communications between appellant's family and one or more of the jurors. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22 (West, Westlaw through 2013 3d C.S.) ("No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court."). "When a juror converses with an unauthorized person about the case, injury to the accused is presumed, and a

6

new trial may be warranted." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). However, appellant has the burden of proving the allegation of juror misconduct. *Id.* In this case, there are allegations of juror misconduct, but there is no evidence to prove that any misconduct actually occurred or to support such a finding. Accordingly, the trial court did not abuse its discretion by denying appellant's request for a mistrial based on alleged juror misconduct involving alleged communications with members of appellant's family. *See id.*

Finally, appellant contends that he was entitled to a mistrial because two jurors allegedly passed notes to each other. Determinations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion if the motion is overruled. *Id.* In this case, the State brought the alleged note-passing incident to the trial court's attention. The prosecutor told the trial court:

> In addition, your Honor, we have been made aware that during the Court's admonishment to the Jury about not having contact with any parties, or third parties, that particular juror made a communication on his notepad with the juror sitting next to him. They both grinned and looked over at the Fonseca family. And then when the Bailiff — and when they saw the Bailiff watching, they put the notebook away.

Ultimately, the judge rejected the allegations of note-passing: "I was keeping something of an eye on the jurors myself when I gave that admonition after lunch, and I didn't see anything that looked like note passing to me. Of course, I could've missed it. I miss things from time to time, but I didn't see it." In addition, the trial court's determination was based on his interview of the two jurors in chambers, during which one of the jurors assured the court that he had merely written his own name on his notepad. The trial court found no impropriety had occurred. This is an issue of fact, and the trial court's finding is

7

supported by the record. Accordingly, we will defer to the trial court's resolution of this matter. *See id.* Again, no abuse of discretion has been shown.

Appellant's first issue is therefore overruled.

### III. Attorney's Fees

In his second issue, appellant argues that the trial court erred by assessing $500 in attorney's fees against him and including that amount as court costs in count one of the judgment because there is no evidence that his status as an indigent defendant changed after the court's initial determination. *See* Tex. Code Crim. Proc. Ann. art. 26.05(g) (West, Westlaw through 2013 3d C.S.); *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) (holding that no objection at trial is necessary to preserve this issue). The State concedes the point of error and agrees that the order of attorney's fees assessed in the judgment should be deleted. Accordingly, the Court sustains appellant's second issue.

### IV. Fines

In his third issue, appellant argues that the trial court erred by assessing fines in the amount of $20,000. Again, the State concedes the error. Because the offenses arose out of the same criminal episode, the $10,000 fines assessed for the two counts must run concurrently, not consecutively. *See State v. Crook*, 248 S.W.3d 172, 174 (Tex. Crim. App. 2008). Appellant's third issue is sustained.

### V. Conclusion

The Court modifies the trial court's judgment (1) to delete the $500 in attorney's fees assessed against appellant and included as court costs in count one of the judgment

and (2) to state that the $10,000 fines imposed against appellant are to run concurrently.

The trial court's judgment is affirmed as modified.


                                        NORA L. LONGORIA
                                        Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of November, 2014.

9